UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                           Case No. 8:18-cr-474-T-33TGW

TERRY ALONZO WILSON
_____/

**ORDER**

This matter comes before the Court pursuant to the United States of America's Motion for Pretrial Determination of Admissibility of Evidence Concerning Defendant's Prior Robbery (Doc. # 59), filed on April 3, 2019. Defendant Terry Alonzo Wilson responded in opposition on May 17, 2019. (Doc. # 68). For the reasons that follow, the Motion is granted in part and denied in part.

**I.    Background**

On September 14, 2018, two men robbed Value Pawn & Jewelry — a pawn shop located in Tampa, Florida. (Doc. # 1 at 3). Neither robber wore gloves or masks, but one robber, who was bald, wore sunglasses and the other robber, who had a beard, wore a baseball hat. (Id. at 3-4). The bald robber pointed a pistol at the pawn shop's occupants and ordered them not to look at his face. (Id.; Doc. # 59 at 2). The two

1

robbers bound the occupants with zip ties and plastic bags, then forced the occupants to the rear of the store. (Doc. # 1 at 3-4). The robbers demanded jewelry from the glass display cases and forced the shop's manager to open the safe. (Id. at 4). The robbers stuffed their backpacks with cash and jewelry, took two of the victims' cellphones and the shop's video surveillance tape, and then fled. (Id.).

As they fled, the bald robber left his pistol inside the store. (Id.). Additionally, the robbers dropped one of the stolen cellphones down the street as they entered their getaway car. (Id. at 5). After the police found the cellphone, they lifted a fingerprint off the phone that matched to Jeremy Williams. (Id.). Williams, a convicted felon, was later identified as the bearded robber. (Id. 5-6). Following his arrest, Williams identified Wilson as the bald robber. (Id. at 6-7). Wilson apparently told Williams that the robbery would be an "inside job" involving one of the pawn shop's employees, but no evidence has been discovered to support that any employees were involved. (Doc. # 59 at 4-5). Despite Williams's identification, the victims could not identify Wilson as the bald robber in a photographic lineup. (Id. at 21). During their surveillance of Wilson, investigators

2

observed him pawn jewelry taken during the robbery at a different pawn shop in Tampa. (Doc. # 1 at 9-10).

On October 16, 2018, a grand jury indicted Wilson for (1) conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) and (b) (Count One); (2) interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a) and (b) (Count Two); (3) using, carrying, and brandishing a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three); and (4) possessing a firearm while a felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Four and Five). (Doc. # 14).

According to the United States, Wilson denied knowing anything about the robbery and claimed to be blind during a post-Miranda interview with investigators. (Doc. # 59 at 9). Additionally, when asked about his possession of the jewelry taken during the robbery, Wilson told investigators that any jewelry he possessed had already belonged to him. (Id.).

Because of Wilson's assertion that he had nothing to the do with the robbery, the United States seeks to introduce evidence of Wilson's prior conviction for robbery with a firearm and attempted robbery with a firearm. Specifically,

3

on April 26, 1999, Wilson entered Cash America Pawn – a pawn shop located less than twenty miles away on the same road as Value Pawn & Jewelry – wearing glasses but no mask and placed a keyboard on the counter, as if he was there to pawn it. (Doc. # 59 at 6 n.2; Doc. # 59-1 at 8). Wilson then produced a revolver and demanded the employees get on the floor. (Doc. # 59-1 at 8). Then, Wilson told the employees not to look at his face, forced them to the rear of the store, and ordered the manager to open the safe. (Id.; Doc. # 59 at 6). Wilson took cash, jewelry, and one of the employee's car keys, then fled when a customer entered the shop. (Doc. # 59 at 6-7). The shop's video surveillance system recorded the robbery. (Id. at 7).

As he fled, Wilson left on the shop's counter the keyboard and his bag, which contained rope and duct tape. (Id.; Doc. # 59-1 at 8). He then drove one of the employee's cars away from the shop before abandoning it. (Doc. # 59 at 7). Following the robbery, Wilson pawned some of the jewelry he stole. (Id.). During the investigation, a maintenance worker who was employed by Wilson's apartment complex told police that Wilson unsuccessfully attempted to recruit him to participate in the robbery, explaining the robbery would be

4

an "inside job." (Id.). A jury convicted Wilson, and he was sentenced to twenty years in prison on January 21, 2000. (Doc. # 59-1 at 13-19). Wilson was released from custody on June 2, 2018. (Doc. # 59 at 6).

Thus, the United States moves to admit the following evidence at trial under Federal Rule of Evidence 404(b): (1) a certified copy of Wilson's prior conviction for robbery with a firearm and attempted robbery with a firearm; and (2) evidence concerning that prior robbery. (Id.).

## II. **Discussion**

Federal Rule of Evidence 404(b) states "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, this type of evidence may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id.

The Eleventh Circuit applies a three-part test to determine the admissibility of evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) sufficient proof must exist for a

5

jury to find that the defendant committed the act in question; and (3) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice under Rule 403. United States v. Green, 873 F.3d 846, 858 (11th Cir. 2017).

### A. Relevance of Prior Robbery to Issues Other Than Wilson's Character

The United States argues evidence of Wilson's prior robbery conviction is relevant to numerous issues other than his character – namely, his intent, knowledge, plan, absence of mistake, lack of accident, and identity. (Doc. # 59 at 9-12). Application of the Eleventh Circuit's three-part test varies depending on the issue for which the evidence is offered. United States v. Phaknikone, 605 F.3d 1099, 1107 (11th Cir. 2010). Therefore, the Court addresses each purpose separately.

To begin, the United States argues evidence of the prior robbery helps establish that Wilson "willfully conspired to rob the Value Pawn." (Doc. # 59 at 10). Wilson is charged with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) and (b). "In every conspiracy case, 'a not guilty plea renders the defendant's intent a

6

material issue' unless the defendant affirmatively makes it a non-issue." United States v. Abreu-Jimenez, 535 F. App'x 860, 867 (11th Cir. 2013). Wilson pled not guilty to conspiracy, and he did not affirmatively remove intent as an issue. In fact, Wilson appears to have affirmatively made intent an issue by stating he did not know anything about the robbery. Therefore, the prior conviction may be used to establish that Wilson willfully conspired to rob the pawn shop in this case. See United States v. Holmes, 171 F. App'x 753, 757 (11th Cir. 2006) (affirming admission of the defendant's prior involvement in an uncharged bank robbery under Rule 404(b) because it was relevant to the defendant's state of mind in the subsequent conspiracy to commit bank robbery case).

Relatedly, the United States argues evidence of the prior robbery will help prove Wilson's plan to commit the robbery in this case. (Doc. # 59 at 11). The pawn shop's surveillance system recorded Wilson's previous robbery, and the robbers in this case took the surveillance video — allegedly showing that Wilson's robbery plan evolved as a result of his prior experience. Because Wilson has denied participating in both the conspiracy and the robbery,

7

evidence of the prior robbery is relevant to Wilson's involvement in the planning of this robbery.

The United States also argues evidence of the prior robbery helps establish that Wilson's "possessing and pawning jewelry taken during the robbery was not a mistake or accident." (Doc. # 59 at 10). Wilson is charged with interference with commerce by robbery in violation of 18 U.S.C. § 1951(a) and (b). "[T]he only mens rea required for a Hobbs Act robbery conviction is that the offense be committed knowingly." United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001). "'Robbery' means the unlawful taking or obtaining of personal property from the person . . . against his will, by means of actual or threatened force." 18 U.S.C. § 1951(b). "[I]t is difficult to imagine how a person could 'unlawfully take and obtain personal property . . . by means of actual and threatened force' . . . by mistake or accident." United States v. Woodruff, 296 F.3d 1041, 1047 (11th Cir. 2002). Therefore, because Wilson denied knowing anything about the robbery and claimed the jewelry in his possession belonged to him, evidence of the prior robbery helps prove that Wilson's possession and sale of jewelry taken during the robbery was not a mistake or accident.

8

The United States further argues evidence of the prior robbery helps establish that Wilson "knowingly robbed [Value Pawn] with a firearm" and "demonstrates his intent to possess the pistol recovered in this case while being a convicted felon." (Doc. # 59 at 10-11). Wilson is charged with violations of 18 U.S.C. §§ 924(c)(1)(A) and 922(g)(1). To obtain a conviction under both statutes, the government must prove beyond a reasonable doubt that Wilson knowingly possessed a firearm. United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011). Wilson used a firearm during his prior robbery; therefore, "the fact that [he] knowingly possessed a firearm . . . on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake." United States v. Jernigan, 341 F.3d 1273, 1282 (11th Cir. 2003). Thus, evidence of the prior robbery helps prove Wilson knowingly robbed the pawn shop with a firearm. See United States v. Sterling, 738 F.3d 228, 239 (11th Cir. 2013) (noting that evidence of the defendant's prior conviction of robbing a bank with a weapon was relevant to his intent to use a weapon during the commission of a subsequent bank robbery). Likewise, evidence of the prior robbery helps prove Wilson had the requisite intent to possess

the firearm recovered in this case while being a convicted felon. See United States v. Patrick, 536 F. App'x 840, 842 (11th Cir. 2013) (affirming admission of the defendant's prior armed robbery under Rule 404(b) because it helped establish the defendant's intent in a subsequent felon-in-possession case).

Finally, the United States argues evidence of the prior robbery helps establish that Wilson, rather than another individual, robbed the pawn shop in this case. (Doc. # 59 at 10). Evidence offered to prove identity must satisfy a "particularly stringent" analysis. United States v. Lail, 846 F.2d 1299, 1301 (11th Cir. 1988). Specifically, "[w]hen extrinsic offense evidence is introduced to prove identity, 'the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi.'" United States v. Whatley, 719 F.3d 1206, 1217 (11th Cir. 2013) (quoting Phaknikone, 605 F.3d at 1108). "The extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his." Phaknikone, 605 F.3d at 1108.

Wilson's prior robbery and the robbery he is charged

with in this case (1) involved robbing a pawn shop (2) located on a specific street in Tampa (3) by someone with a pistol (4) who wore glasses (5) but not gloves or masks (6) that unsuccessfully attempted to recruit an accomplice by claiming the robbery would be an inside job, (7) came prepared to bind his victims, (8) yelled at the victims not to look at his face, (9) forced the victims into the back of the shop, (10) ordered the manager to open the safe, and (11) inadvertently left an item at the crime scene. However, most of these similarities are common components of armed robberies. See, e.g., Lail, 846 F.2d at 1301 (explaining use of a handgun and lack of disguise are common traits of many robberies). The only relatively unique similarities are that the robberies were committed on the same street in Tampa and both robbers wore glasses (but not masks or gloves) and attempted to recruit accomplices by claiming the robberies would be inside jobs.

Furthermore, there are also notable differences between the robberies. First, two robbers were involved in this case's robbery, while Wilson acted alone in the prior robbery. See United States v. Myers, 550 F.2d 1036, 1046 (5th Cir. 1977) ("The presence of a marked dissimilarity—that the charged

crime was perpetrated by a lone gunman, while the uncharged crime was committed by two armed men—further undermines the force of the inference of identity."). Second, Wilson feigned pawning a keyboard before beginning his robbery. By contrast, the robbers in this case did not stage a phony transaction. Third, while both robbers came prepared to bind their victims, only the robbers in this were actually successful in binding their victims. Cf. Lail, 846 F.2d at 1301 (noting "major dissimilarities" between robberies such as that the robber in the uncharged robbery posed as a businessman and took the manager hostage while the defendant in his previous robbery wore a t-shirt and jeans and took no hostages). Relatedly, the robbers in this case brought zip ties and plastic bags to bind their victims, while Wilson brought rope and duct tape for his prior robbery. Fourth, only the robbers in this case took the pawn shop's surveillance video. Fifth, Wilson stole one of the employee's cars to use as a getaway vehicle for his robbery, while the robbers in this case brought their own car.

In sum, there are some similarities between the robberies, but even these similarities combined lack distinction. Additionally, the relatively unique similarities

12

do not seem so "unusual" to make it "very likely" that the unknown perpetrator of the robbery in this case and Wilson are the same person. See Whatley, 719 F.3d at 1217 (noting the similarities between the robberies were "unusual"); Myers, 550 F.2d at 1046 ("[The crimes] must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person."). While "it is not necessary that the charged crime and the other crimes be identical in every detail," Myers, 550 F.2d at 1046, the numerous differences between the robberies prevent the United States from showing the robbery in this case is the handiwork of Wilson. Consequently, evidence of the prior robbery may not be used to establish Wilson's identity as the bald robber in this case.

**B.    Proof That Wilson Committed the Prior Robbery**

"The prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur." United States v. Bowe, 221 F.3d 1183, 1192 (11th Cir. 2000). "[E]xtrinsic evidence of a prior conviction provides sufficient proof that the defendant committed the prior bad

act." United States v. Floyd, 522 F. App'x 463, 465 (11th Cir. 2013). Here, the United States intends to introduce a certified copy of Wilson's prior robbery conviction into evidence at trial, which is sufficient to establish that he committed the act. See Green, 873 F.3d at 864 ("[W]hen the [Rule 404(b) prior] act has become the subject of a conviction, the prosecutor can prove the act by introducing a certified judgment of conviction."); United States v. Gay, 423 F. App'x 873, 876 (11th Cir. 2011) ("[T]he Government submitted certified copies of the prior convictions, and hence offered sufficient proof for a jury to find that [the defendant] committed these acts.").

Wilson contends there is insufficient proof that he committed the prior robbery. There, a juror testified after the verdict that she believed Wilson was not guilty but was pressured into changing her vote. (Doc. # 68 at 13; Doc. # 68-1). It is unclear what effect, if any, this testimony had on the case. But the record reflects that the trial court considered the testimony and nevertheless sentenced Wilson, who served more than eighteen years in prison for the robbery. See (Doc. # 59-1 at 13-19; Doc. # 68-1).

Furthermore, the jury's verdict required a finding that

Wilson was guilty of the robbery beyond a reasonable doubt. Therefore, even if a juror had some misgivings about the verdict, this verdict is sufficient to establish that a jury could find Wilson committed the robbery by at least a preponderance of the evidence. See Green, 873 F.3d at 864 ("Obviously, a conviction based on a verdict of guilty after a trial will suffice. A jury can convict only if it has found the defendant guilty beyond a reasonable doubt, which standard clearly exceeds the preponderance standard.").

## C. Probative Value Weighed Against Prejudice

Federal Rule of Evidence 403 states a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The determination of whether Rule 404(b) evidence is substantially outweighed by its prejudicial impact "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Jernigan, 341 F.3d at 1282 (quotation marks omitted). Nonetheless,

exclusion under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010) (quotation marks omitted).

In this case, while Wilson's prior robbery and the robbery he is presently charged with were not similar enough to allow the prior conviction to be offered to establish his identity, their similarities are nonetheless highly probative of other issues, including Wilson's state of mind. See United States v. Ramirez, 426 F.3d at 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."). Furthermore, the United States has established its prosecutorial need for evidence of the prior robbery. For example, the United States' case will rely primarily on the testimony of Williams – a convicted felon – because the robbers took the security footage and the victims could not identify Wilson as the robber in a photographic lineup. See United States v. Abram, 171 F. App'x 304, 313 (11th Cir. 2006) (affirming admission of prior uncharged robberies under Rule 404(b) because the

government's only eyewitness was a convicted felon).

True, "temporal remoteness depreciates the probity of the extrinsic offense." United States v. Beechum, 582 F.2d 898, 915 (11th Cir. 1978). However, "the significance of the time period since the prior offense is diminished where one was incarcerated for a significant part of that time." United States v. Borja-Antunes, 530 F. App'x 882, 885-86 (11th Cir. 2013). While Wilson's prior conviction occurred roughly nineteen years before the robbery at issue here, Wilson has been incarcerated for almost that entire time. In fact, he was released from custody less than four months prior to the robbery in this case. Therefore, the temporal proximity of Wilson's prior robbery is within the bounds of admissibility. See Sterling, 738 F.3d at 239 (affirming admission of fifteen-year-old robbery under Rule 404(b) where the defendants were incarcerated until seven years before the charged robbery); Patrick, 536 F. App'x at 843 (affirming admission of eighteen-year-old robbery under Rule 404(b)). In sum, the probative value of evidence of Wilson's prior robbery is not substantially outweighed by its prejudicial impact.

### III. Conclusion

For the foregoing reasons, the United States may offer evidence of Wilson's prior robbery conviction to help establish his intent, knowledge, plan, absence of mistake, and lack of accident in this case's robbery. However, evidence of Wilson's prior robbery conviction may not be offered to establish his identity as the bald robber in this case. Therefore, the United States' Motion for Pretrial Determination of Admissibility of Evidence Concerning Defendant's Prior Robbery (Doc. # 59) is granted in part and denied in part.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

The United States of America's Motion for Pretrial Determination of Admissibility of Evidence Concerning Defendant's Prior Robbery (Doc. # 59) is **GRANTED IN PART AND DENIED IN PART** as provided herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>24th</u> day of May, 2019.

_/s/ Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE